---

The following opinion of the justices of the Supreme Court was delivered to the Honorable Senate, February 4, 1909, in the matter of

THE SUBMISSION OF CONSTITUTIONAL AMENDMENTS.

(1)  *Constitutional Law.   Publication and Submission of Amendments.*

The General Assembly has constitutional power, in approving a proposition of amendment to the constitution, passed by a preceding Assembly concerning entirely distinct subjects and relating to three distinct articles, to provide that such proposition be published and submitted to the electors as separate proposed amendments to the constitution.

2)  *Same.*

Art. XIII of the constitution, after providing how the General Assembly may propose amendments to the constitution, further provides, that " the same shall be published and submitted to the electors in the mode provided in the act of approval," so that it is the Assembly approving the amendment which has the sole right to determine the mode in which such amendment shall be published and submitted to the electors.

(3)  *Same.*

Where amendments to the constitution are proposed in a single resolution, the succeeding General Assembly having the power to divide them in its publication and submission to the electors must state the amendments separately in the same form in the act of approval as they were as constituent parts of the resolution proposing them together.

(4)  *Same.*

The act passed by a preceding General Assembly proposing amendments to the constitution in a single resolution contained a final section providing that the amendment should take the place of certain sections in the constitution, which sections and other inconsistent provisions were annulled:—

*Held*, that the section had no effect to prevent the approval or publication and submission of the amendments separately, since it was not in itself an integral and necessary part of any of the preceding sections of the proposed amendments, in as much as it would be just as effective if the annulment clause only appeared in the final section.

*Held*, further, that the section was intended to indicate the effect of the several proposed amendments in annuling certain portions of the existing constitution, but that it did not do so quite clearly and satisfactorily, although its meaning was sufficiently obvious so as not to vitiate the preceeding sections.

*Held*, further, that, in submitting the amendments separately, the provisions of this section should be separated and form a part, respectively, as they might apply, of the separate acts providing for the publication and submission to the electors of the several amendments.

SUPREME COURT.

*To the Honorable the Senate of the State of Rhode Island and Providence Plantations:*

·We received from your honors, on the 29th day of January, 1909, a resolution, requesting our written opinion upon certain questions of law, in the following form, to wit:

"STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS.
"IN SENATE OF THE GENERAL ASSEMBLY,
"JANUARY SESSION, A. D. 1909.

"RESOLUTION

"Requesting the written opinion of the Honorable Judges of the Supreme Court upon the division for submission separately to the electors of certain amendments to the constitution of the State proposed in a resolution passed at the January session, A. D. 1908, of the General Assembly.

"WHEREAS, At the January session, A. D. 1908, of the General Assembly of this State the following 'Resolution proposing amendments to the Constitution of the State' was duly adopted:

"'Resolved, That a majority of all the members elected to each house of the general assembly voting therefor, that the

following amendments to the constitution of the state be proposed to the qualified electors of the state, in accordance with the provisions of Article XIII of the constitution, for their adoption, to be denominated Article XIII of amendments.

" 'ARTICLE XIII.

" 'SECTION 1.   Every bill, resolution, or vote (except such as relate to adjournment, the organization or conduct of either or both houses of the general assembly, and resolutions proposing amendment to the constitution) which shall have passed both houses of the general assembly shall be presented to the governor.

" ' If he approve it he shall sign it, and thereupon it shall become operative, but if he does not approve it he shall return it, accompanied by his objections in writing, to the house in which it originated, which shall enter his objections in full upon its journal and proceed to reconsider it.   If, after such reconsideration, three-fifths of the members present and voting in that house shall vote to pass the measure, it shall be sent, with the objections, to the other house, by which it shall likewise be reconsidered, and if approved by three-fifths of the members present and voting in that house, it shall become operative in the same manner as if the governor had approved it, but in such cases the votes of both houses shall be determined by ayes and nays and the names of the members voting for and against the measure shall be entered upon the journal of each house respectively.   If the measure shall not be returned by the governor within six (6) days (Sundays excepted) after it shall have been presented to him, the same shall become operative unless the general assembly, by adjournment, prevents its return, in which case it shall become operative unless transmitted by the governor to the secretary of state, with his disapproval in writing, within ten days after such adjournment.

" 'SEC. 2.   The lieutenant-governor shall preside in the senate and in grand committee.   The presiding officer of the senate and grand committee shall have a right to vote in case of equal division, but not otherwise.

" 'SEC. 3.   If, by reason of death, resignation, absence, or other cause, the lieutenant-governor is not present, to preside in the senate, the senate shall elect one of their own members to preside during such absence or vacancy; and until such election is made by the senate, the secretary of state shall preside. The presiding officer of the senate· shall preside in grand committee and in joint assembly.

" 'SEC. 4.   The house of representatives shall never exceed one hundred members, and shall be constituted on the basis of population, always allowing one representative for a fraction exceeding half the ratio; but each town and city shall always be entitled to at least one member; and no town or city shall have more than one-fourth of the whole number of members. The general assembly may, after any new census taken by the authority of the United States or this state, re-apportion the representation in conformity with the foregoing provisions. As soon as this amendment goes into effect, the general assembly shall divide each town and city into as many districts as it is entitled to representatives, and after each census or as occasion may require, the general assembly may so divide each town and city, and one representative shall be elected from each district by the qualified electors thereof. Such districts shall be as nearly equal in population and as compact in territory as possible.

" 'SEC. 5.   This amendment shall take, in the constitution of the state, the place of sections 2 and 3 of article VI, "Of the Senate," and of section 1 of article V, " Of the House of Representatives," which said sections and all other provisions of the constitution inconsistent herewith are hereby annulled.'

" *Resolved*, That the Honorable Judges of the Supreme Court be and they hereby are respectfully requested to·give to the senate their written opinion upon the following questions of law:

"*First*.   Has the General Assembly at its present session the constitutional power, in approving the proposition made in the above resolution passed at the January session, A. D. 1908, of the General Assembly of the State, to provide that such proposition, containing separate amendments, be published

and submitted to the electors as separate proposed amendments to the constitution?

"*Second.*   Under the provisions of article XIII of the constitution of the State, does the General Assembly proposing amendments to the constitution of the State properly control the mode in which the proposed amendments shall be published and submitted to the electors of the State, or does the succeeding General Assembly approving any amendments have the sole right to determine the mode in which such amendments shall be published and submitted to the electors, whether singly or together?

"*Third.*   When amendments to the constitution of the State are proposed in a single resolution, is it necessary that the separate amendments combined in the resolution proposing them, if the succeeding General Assembly has the constitutional power to divide them in its publication and submission to the electors, be stated separately in the same form in the act of approval as they were as constituent parts of the resolution proposing them together?

"*Fourth.*   Has section 5 in the above resolution proposing amendments to the constitution of the State any effect to prevent the approval or publication and submission to the electors separately of the several amendments contained in the above resolution: or does said section 5 indicate the effect of the several proposed amendments in annulling certain portions of the existing constitution, and if it be in the power of the present General Assembly to separate said proposed amendments and upon approval publish and submit them separately to the people, should the provisions of said section 5 be separated and form a part, respectively, as they may apply, of the separate acts providing for the publication and submission to the electors of the several amendments?"

We answer question "*First*" in the affirmative.   The resolution passed by the last General Assembly, as above set forth, proposing "the following amendments to the constitution of the state," by the use of the plural form recognizes these as separate matters of amendment; as also they are in fact shown to be upon a mere reading of them.   "Section 1" relates solely

to the veto-power proposed to be conferred upon the governor, and provides the limitations upon and methods of the exercise of such power. It is an entirely new subject in the constitution of the State (no veto-power having heretofore existed), and bears no relation to the subsequent sections setting forth other proposed amendments. If "Section 1" be finally approved by the electors in accordance with the provisions of "Article XIII," it becomes a part of the constitution and naturally falls into place therein as a part of "Article VII, Of the Executive Power."

Sections 2 and 3 relate to the powers and duties of the lieutenant-governor as presiding officer of the senate and grand committee, etc., proposing to substitute him as such presiding officer in place of the governor; and providing who shall preside in case the lieutenant-governor is not present; and if finally approved by the electors, naturally takes in the constitution the place of section 2 and section 3 of "Article VI, Of the Senate."

Section 4 proposes to fix the number of members in the house of representatives and to provide for their distribution among the towns and cities, and for dividing the towns and cities into districts; and if finally approved by the electors, naturally takes in the constitution the place of section 1 of "Article V, Of the House of Representatives."

(1) It thus appears that these proposed amendments concern three entirely distinct subjects, and relate to three distinct articles of the constitution; and it is entirely appropriate and within the constitutional power of the General Assembly at its present session, if it approve said proposition, to provide that such proposition containing separate amendments be published and submitted to the electors as separate proposed amendments to the constitution; as will more fully appear in discussing the next question.

Question "*Second*" divides itself into two inquiries:

(1) "Does the General Assembly proposing amendments to the constitution of the State properly control the mode in which the proposed amendments shall be published and submitted to the electors of the State?"

(2) " Or does the succeeding General Assembly approving any amendments have the sole right to determine the mode in which such amendments shall be published and submitted to the electors, whether singly or together?"

To the first inquiry we answer in the negative; to the second we answer in the affirmative.

(2)   Article XIII of the constitution, after providing how the General Assembly "may propose amendments to this constitution," also further provides for publication of such propositions in the newspapers; for sending, by the secretary of state, printed copies thereof to town and city clerks; for insertion thereof in the warrants calling the next annual town and ward meetings; for the reading of said propositions, etc., by said clerks, to the electors assembled, before the election of senators and representatives shall be had; and then concludes as follows: "If a majority of all the members elected to each house, at said annual meeting, shall approve any proposition thus made, the same shall be published and submitted to the electors in the mode provided in the act of approval; and if then approved by three-fifths of the electors of the state present and voting thereon in town and ward meetings, it shall become a part of the constitution of the state."

It therefore becomes plain that the sole function of the former General Assembly was to "*propose* amendments" so that they might be published, in the manner set forth, for the information of the electors; so that the electors might be fully advised, before the succeeding election, what amendments were proposed, and might govern themselves accordingly in voting for the members of the succeeding General Assembly.  It is also equally plain that the succeeding General Assembly has the power to approve or disapprove the proposed amendments, or any of them; and if it approve, then "*the same shall be published and submitted to the electors in the mode provided in the act of approval.*"

The use of the broad term "*mode*" in the last quoted sentence, in our opinion was intended to give, and does give, to the succeeding General Assembly the fullest scope in determining, by its act of approval, whether the proposed amendments, or

any of them, shall be submitted to the electors singly, or together.   Precedent for such action is not wanting; for it appears in Rhode Island Acts, Resolves and Reports, January, 1854, p. 276, that the General Assembly passed a resolution (in form single) proposing, as amendments to the constitution of this State, nine separate and distinct articles relating to several distinct and separate matters; that in May, 1854, a committee was appointed by joint resolution to report upon these proposed amendments, "and also to report upon the manner in which the same shall be presented to the people," etc., and that this committee reported an act, etc.   (See R. I. Acts, Resolves and Reports, June, 1854, p. 16.)   It also appears (*Ibid*, June, 1854, pp. 17, 18) that, by its act of approval, the General Assembly approved only five of the original nine amendments proposed by the previous General Assembly; that it provided for submission of the proposed amendments to the electors at special meetings in November, 1854; that in section 4 of the act (*Ibid*, p. 18) it provided that the secretary of state should "cause fifty thousand of *each* of said propositions of amendment to be printed upon *separate* ballots with the word 'approve' upon the same, and a like number of each with the word 'reject' upon the same," and should cause the same to be distributed, etc.; and in section 5 of the act provided that "the said propositions shall be voted upon by the electors separately," etc.   And it is to be noted that only three of these proposed amendments were approved by a sufficient number of the electors, and now appear as "Articles of Amendments adopted November, 1854," article I, article II, and article III; the numbering being changed to indicate the order in which the amendments finally adopted appear in the amendments to the constitution.

We find also a very instructive and well-considered case in *Trustees* v. *McIver*, 72 N. C. 76, where the Supreme Court of North Carolina, considering the provisions of the constitution of that State, substantially similar to ours relating to amendments, came to substantially the same conclusion that we have reached, as to the power of the succeeding General Assembly to submit to the people separately proposed amendments

to the constitution which had been proposed by the previous Assembly in the form of a single bill; the original bill contained seventeen proposed amendments; after a new election the next General Assembly rejected nine and adopted eight of these amendments, which had all been previously incorporated and adopted in one bill, but incorporated each of the amendments adopted in a separate bill, and in that form submitted them to the vote of the people, who approved of each amendment.

(3)   Question *"Third"* is answered in the affirmative. The several sections numbered 1, 2, 3, 4, if separated so that section 1, by itself; sections 2 and 3, together; and section 4, by itself, shall be published and submitted to the electors as three separate and distinct propositions of amendment, should still appear in the same form of words as they were in the original resolution. They are the identical amendments proposed to the qualified electors of the State, by the resolution of the previous General Assembly, published in the newspapers, inserted in the warrants or notices issued for warning town and ward meetings, and read to the electors assembled, in accordance with the provisions of article XIII of the constitution; and if separated by the act of approval of the present General Assembly, for the purpose of separate submission to the electors, they must still be stated in the same form as originally stated.

The words and figures, convenient as a matter of form for indicating the numbers of sections, or such Roman numerals as may be convenient, according to customary usage, to indicate the serial number of the particular amendment, are not of the substance of the proposed amendments; and such changes therein as may be deemed convenient or necessary would not interfere with the separation, or make the legal significance of the proposed amendments different in any sense; it would be merely a matter of convenient and customary enumeration.

Question *"Fourth"* subdivides into three inquiries:

(4)   (1)   "Has section 5 in the above resolution proposing amendments to the constitution of the State any effect to prevent

the approval or publication and submission to the electors separately of the several amendments contained in the above resolution?"

As to this first inquiry, we answer in the negative. The original resolution would have been just as effective without section 5, as with it. The section as it stands is not clearly and carefully drawn, because, as before indicated, section 1, relating to the veto-power, would, if finally adopted by the electors, become a part of "Article VII, Of the Executive Power," by way of addition; section 2 and section 3, if finally adopted by the electors take the place of section 2 and section 3, respectively, of "Article VI, Of the Senate;" and section 4, if finally adopted by the electors, takes the place of section 1, of "Article V, Of the House of Representatives." If the proposed amendments should be submitted to the electors as a whole, without separation, by an act of approval of this present General Assembly, section 5 should be redrafted, so as to clearly indicate the effect of the previous sections as above set forth. But it in no way prevents the approval or publication and submission thereof separately, because it is not in itself an integral and necessary part of either of the preceding sections, inasmuch as it would be just as effective if the annulment clause only appeared in section 5.

This leads us to the second inquiry, viz.:

(2)    "Or does said section 5 indicate the effect of the several proposed amendments in annulling certain portions of the existing constitution?"

To this we answer that it was so intended, but that it does not do so quite clearly and satisfactorily, although it is evident that its meaning is sufficiently obvious so as not to vitiate the preceding sections.

This leads us to the third inquiry, viz.:

(3)    "And if it be in the power of the present General Assembly to separate said proposed amendments and upon approval publish and submit them separately to the people, should the provisions of said section 5 be separated and form a part,

respectively, as they may apply, of the separate acts providing for the publication and submission to the electors of the several amendments?"

This inquiry is answered in the affirmative for obvious reasons which have been fully set forth in the answers to the previous questions.

EDWARD CHURCH DUBOIS,
JOHN TAGGARD BLODGETT,
CLARKE H. JOHNSON,
C. ,FRANK PARKHURST,
WILLIAM H. SWEETLAND.

February 4, 1909.